UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEION WILSON,
    *Plaintiff*,

v.

ANTONIO SANTIAGO, *et al.*,
    *Defendants*.

No. 3:19-cv-1807 (JAM)

**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Deion Wilson is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed this lawsuit *pro se* and *in forma pauperis* against several DOC officials, claiming that he was unlawfully designated to the DOC's Security Risk Group ("SRG") program—a program that allows for detainees who are suspected of certain gang affiliations to be placed in more restrictive conditions of confinement.[1] Because I conclude that Wilson has not alleged facts that give rise to plausible grounds for relief, I will dismiss the complaint without prejudice to filing of an amended complaint with additional facts.

## BACKGROUND

The complaint names the following five defendants: Antonio Santiago, DOC's Director of Security; John Aldi, the former SRG Counselor and Coordinator for the DOC; Lieutenant Daniel Papoosha, the current SRG Coordinator; Lieutenant J. Russell, who works in Intelligence for the New Haven Correctional Center ("NHCC"); and Christine Whidden, the former DOC Director of Security. Doc. #1 at 1-3.

---

[1] *See* Connecticut State Department of Correction, Administrative Directive 6.14 (Security Risk Groups), available at https://portal.ct.gov/DOC/AD/AD-Chapter-6 [https://perma.cc/UV72-HTDD] (last accessed April 27, 2020).

The following facts are derived from Wilson's allegations in his complaint and are accepted as true only for purposes of this ruling. Doc. #1. In August 2017, Wilson was a pretrial detainee, and he was "affiliated" as a member of the Crips gang by Lieutenant Russell (presumably at NHCC where Lt. Russell is employed). *Id.* at 5 (¶ 1). Wilson was sent to "the ticket group without an SRG ticket because of social media posts and pictures which are protected by freedom of speech and expression." *Ibid.* (¶ 2); *see also id.* at 4 (alleging free speech retaliation for Wilson's posts on Facebook). Wilson does not elaborate on any more process he received before his SRG designation except to cryptically allege at the end of the complaint that "[a]t the hearing, I was not allowed to make a plea or challenge the accusations against me." *Id.* at 7 (¶ 21).

According to Wilson, he is or was subject to punitive conditions of the SRG program as a pretrial detainee. *Id.* at 5 (¶ 4). Because this is his second time in the SRG program, Wilson also alleges that he must be "ticket free" for two years before he can enter general population under the Administrative Directive 6.14. *Ibid.* (¶ 3). Wilson cannot get "parole or goodtime" credit while in the SRG program. *Id.* at 6 (¶ 12). Additionally, Wilson's SRG designation prevents him from attending religious services, receiving hot water, eating away from a toilet, and participating in educational programs, such as GED classes. *Ibid.* (¶¶ 13-17). He has only limited outside communication compared to inmates in general population. *Id.* at 7 (¶ 20). Wilson alleges that these conditions gave him "no choice but to live like [he had been] sentence[d]," although he was a pretrial detainee. *Ibid.* (¶ 18). Wilson seeks compensatory and punitive damages as well as injunctive relief, asking for a court order reinstating him in general population. *Id.* at 9.

Public records reflect that in December 2017, Wilson was sentenced on larceny and burglary charges to six years of imprisonment. *See State v. Wilson*, No. U04W-CR17-0447200-S (Conn. Super. Ct. Dec. 20, 2017).[2] He is now confined at Corrigan-Radgowski Correctional Center. *See* Doc. #1 at 1, 9.[3]

### DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d

---

[2] *See* State of Connecticut Judicial Branch, Criminal/Motor Vehicle Conviction Case Detail, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=62284e48-39fd-4ea1-8d45-cbbf3e044e56 [https://perma.cc/7327-TK23] (last accessed April 27, 2020).
[3] *See* State of Connecticut Department of Corrections, Inmate Information, available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=408379 [https://perma.cc/N4DK-V644] (last accessed April 27, 2020).

Cir. 2015).

### *Injunctive relief*

Wilson does not allege plausible grounds for a grant of injunctive relief. He alleges that he was designated to the SRG program in August 2017 and that "[b]ecause it is my second time in SRG program, I must do two years ticket free before I enter general population pursuant to Administrative Directive 6.14 Security Risk Groups." Doc. #1 at 5 (¶ 3). Two years already elapsed by the time that he filed this complaint in November 2019. Although Wilson seeks a court order reinstating him to general population, *id.* at 9, in light of Wilson's own allegations that he was subject to a two-year restriction that has now lapsed, the complaint does not plausible allege any ongoing violation of Wilson's rights from his SRG designation that would warrant a grant of injunctive relief. There is no basis for any official-capacity claims for injunctive relief against any of the individual defendants in the absence of any ongoing violation of Wilson's rights. *See Vaughan v. Aldi*, 2019 WL 6467550, at *3 (D. Conn. 2019).

### *First Amendment retaliation*

In the absence of any grounds for an official-capacity claim for injunctive relief, this leaves for consideration only Wilson's claims for money damages against the defendants in their individual capacities.[4] As to Wilson's claim that he was subject to retaliation for a violation of his First Amendment right to post information on social media, the basic requirements for a First Amendment retaliation claim are "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection

---

[4] Although his complaint does not specify whether Wilson brings suit against defendants in their personal or official capacity, or both, to the extent that Wilson would seek to advance money damages claims against defendants in their official capacities, they would be immune from suit as DOC employees. *See Currytto v. Doe*, 2019 WL 2062432, at *4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)).

4

between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotations omitted). In cases involving similar allegations as Wilson now makes, I have previously allowed First Amendment claims by state prisoners to proceed where they alleged that they received SRG designations on the basis of their social media posts. *See, e.g.*, *Scozzari v. Santiago*, 2019 WL 1921858, at *3 (D. Conn. 2019); *Hayes v. Santiago*, 2018 WL 5456494, at *3 (D. Conn. 2018). I now think those rulings were mistaken. As Judge Dooley has recently noted, an allegation that prison officials relied on social media posts for making a determination of a detainee's gang membership "is not enough to satisfy the third element, a causal connection between the adverse action and the protected speech" as is required to state a valid First Amendment retaliation claim. *See Caves v. Payne*, 2020 WL 1676916, at *4 (D. Conn. 2020). That is because "[t]he First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v.* Mitchell, 508 U.S. 476, 489 (1993); *United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (same).

In the absence of an allegation that Russell sought to punish or retaliate against Wilson simply for engaging in First Amendment-protected expression (or for the content of that expression apart from what it suggested about Wilson's gang affiliation), the complaint does not plausibly allege a First Amendment retaliation claim. *See Caves*, 2020 WL 1676916, at *4 (rejecting First Amendment retaliation claim because "[t]he defendants' use of social media posts and Caves' own statements therein, is no different than if Caves announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit"). Accordingly, I will dismiss Wilson's First Amendment claim.

### *Substantive due process*

Wilson further alleges a violation of his due process rights. The Due Process Clause of

the Fourteenth Amendment protects both a right to "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Substantive due process generally protects against the government's "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* at 846.

In the context of a pretrial detainee's claim against restrictive conditions of confinement, the Second Circuit has made clear that administrative segregation measures do not "violate substantive due process where prison officials subject[] pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 56 (2d Cir. 2017). Put differently, "[a]lthough prison officials are to be afforded deference in matters of institutional security, such deference does not relieve officials from the requirements of due process or permit them to institute restrictive measures on pretrial detainees that are not reasonably related to legitimate governmental purposes." *Ibid.*

In *Almighty Supreme Born Allah*, the Second Circuit concluded that prison officials violated substantive due process when they placed a pretrial detainee in administrative segregation "solely on the basis of his prior assignment to (and failure to complete) the Administrative Segregation program during a prior term of incarceration" and when prison officials "adhered reflexively to a practice that did not allow for individualized consideration of [the plaintiff's] circumstances and that required him to be placed in Administrative Segregation regardless of his actual threat, if any, to institutional security." *Id.* at 57. Here, Wilson does not allege that he was reflexively designated to the SRG program in the absence of any individualized consideration. To the contrary, he alleges that it was Russell's individualized consideration of his social media postings that suggested Wilson's membership in the Crips gang

and that prompted his SRG designation.

Wilson does not otherwise allege that the DOC lacks a legitimate interest in taking security measures against detainees for whom there are grounds to conclude that they are gang members. *See Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) (discussing government interest in "[p]rison security, imperiled by the brutal reality of prison gangs" that "seek nothing less than to control prison life and to extend their power outside prison walls").

In *Almighty Supreme Born Allah*, the Second Circuit concluded that, even if a pretrial detainee has been properly subject to administrative segregation, substantive due process also applies to the conditions imposed on the detainee, which must be reasonably related to a legitimate government purpose, such as institutional security. *See* 876 F.3d at 55. The Second Circuit raised questions whether certain conditions "were reasonably related to the ostensible goal of prison security," including solitary confinement for 23 hours per day, showering in leg irons and wet underwear, no programming or counseling therapy, and strict limits on visits, phone calls, and mail. *See id*. at 58; *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (discussing general conditions of confinement requirements to provide food, clothing, and shelter for pretrial detainees under the Fourteenth Amendment).

Although Wilson alleges that he was subject to deprivations as a result of his SRG designation (such as no programs, no religious services, no hot water, and having to eat food next to a toilet), the sparse allegations of the complaint do not state that any of the named defendants were personally involved with or had knowledge of the imposition of any of these conditions. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013). Accordingly, I will dismiss Wilson's substantive due process claim.[5]

### *Procedural due process*

A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). Liberty restrictions on a pretrial detainee may not amount to punishment of the detainee, and a pretrial detainee who is placed in segregation for administrative reasons is entitled to "some notice of the charges against him and an opportunity to present his views." *Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979) and *Hewitt v. Helms*, 459 U.S. 460 (1983)).

Here, apart from his complaint about Russell's reliance on social media postings, Wilson does not complain about any of the procedural aspects of his designation to the SRG program except to allege without further elaboration that "[a]t the hearing, I was not allowed to make a plea or challenge the accusations against me." Doc. #1 at 7 (¶ 21). But, again, Wilson does not allege any facts to suggest how any of the defendants knew or were personally involved with any impropriety that occurred at any hearing. Accordingly, he has failed to adequately allege a plausible claim for relief against any of the named defendants with respect to his claim that he did not receive a fair hearing. I will therefore dismiss Wilson's procedural due process claim.

---

[5] The Second Circuit in *Almighty Supreme Born Allah* ruled that the defendant officers had qualified immunity because the law was not been clearly established at the time that they acted. *See* 876 F.3d at 58-60. Because the Second Circuit's decision issued on November 22, 2017, Wilson is unlikely to be able to overcome a qualified immunity defense with respect to allegations of substantive due process violations that occurred prior to that date. If, however, he chooses to file an amended complaint, Wilson should be specific not only as to the dates when he was subject to improper SRG designation but also as to the dates when he was subject to unconstitutional conditions of confinement so that the Court can consider whether his substantive due process claims are barred by qualified immunity. He should also be more specific about any violations of his right to participate in religious services, *see* Doc. #1 at 6 (¶ 14), and how that adversely affected his right to free exercise of religion.

**CONCLUSION**

In accordance with the Court's initial review pursuant to 28 U.S.C. § 1915A, the Court DISMISSES the complaint without prejudice. If Wilson believes that he can allege facts that overcome the deficiencies identified in this ruling, he may file an amended complaint by **May 18, 2020**. Although Wilson need not allege facts at this time to show that he timely complained to prison officials and has properly exhausted his claims under the Prison Litigation Reform Act, he should be aware that if he did not timely and fully exhaust all his administrative remedies, his complaint may be subject to dismissal at a later time upon motion of any defendants. The Clerk of Court shall administratively close this case subject to re-opening in the event that Wilson chooses to file an amended complaint.

It is so ordered.

Dated at New Haven this 27th day of April 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge