UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DEION WILSON,
    *Plaintiff*,

v.

ANTONIO SANTIAGO, *et al.*,
    *Defendants*.

No. 3:19-cv-1807 (JAM)

**ORDER DISMISSING AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

    Plaintiff Deion Wilson is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed this lawsuit *pro se* and *in forma pauperis* against several DOC officials, claiming that he was unlawfully designated to the DOC's Security Risk Group ("SRG") program—a program that allows for detainees who are suspected of certain gang affiliations to be placed in more restrictive conditions of confinement.[1] After an initial review, I dismissed Wilson's complaint alleging violation of his rights under the First Amendment and Fourteenth Amendment because he had not alleged facts giving rise to plausible grounds for relief. *Wilson v. Santiago*, 2020 WL 1989135, at *4 (D. Conn. 2020). In doing so, I afforded Wilson the opportunity to file an amended complaint to correct the deficiencies identified in my ruling. *Id.* at *1, 4.

    On June 18, 2020, Wilson filed his amended complaint. Doc. #10. I now conduct another initial review to determine if Wilson's amended complaint has alleged plausible claims for relief. Because I conclude that Wilson has not cured the deficiencies of his prior complaint and has not

---

[1] *See* Connecticut State Department of Correction, Administrative Directive 6.14 (Security Risk Groups), available at https://portal.ct.gov/DOC/AD/AD-Chapter-6 [https://perma.cc/4RT5-D25G] (last accessed October 7, 2020).

1

alleged facts that give rise to plausible grounds for relief, I will dismiss Wilson's amended complaint with prejudice.

## BACKGROUND

The complaint names the same five defendants as the original complaint: Antonio Santiago, DOC's Director of Security; John Aldi, the former SRG Coordinator for the DOC; Lieutenant Daniel Papoosha, the current SRG Coordinator; Christine Whidden, the former DOC Director of Security; and Lieutenant J. Russell, who works in Intelligence for the New Haven Correctional Center ("NHCC"). Doc. #10 at 1-3.

The following facts are derived from Wilson's allegations in his amended complaint and are accepted as true only for purposes of this ruling. *Id*. On August 7, 2017, when Wilson was a pretrial detainee, Lieutenant Russell placed Wilson in restrictive housing due to Wilson's alleged SRG affiliation (presumably at NHCC where Lt. Russell is employed). *Id*. at 5-6 (¶¶ 1, 6).[2] Wilson alleges that at the hearing that led to his SRG designation, the disciplinary report was "based solely on a photo posted and comments on Facebook" on July 29, 2017, when he was not in DOC custody, and that there was "no proof [Wilson] was the actual person that posted the picture and comments." *Id*. at 5 (¶ 3). Moreover, Wilson was "sent to a hearing without the ability to choose a witness or an advisor/advocate." *Ibid*. (¶ 2). The hearing officer did not permit Wilson to present evidence, a defense, or any rebuttal of the evidence against him. *Ibid*. ¶ 4. The hearing officer did not inform Wilson of his ability to appeal the SRG designation. *Id*. at 8 (¶ 15). After he later learned from other inmates that he could appeal the SRG designation, Wilson filed an appeal. *Ibid*.

---

[2] The amended complaint does not mention Wilson's alleged affiliation, but his original complaint stated that Lt. Russell had "affiliated" him as a member of the Crips gang. Doc #1 ¶ 1.

According to Wilson, he is or was subject to the punitive conditions of the SRG program as a pretrial detainee. *Id*. at 7 (¶ 11-13). Because this was his second time in the SRG program, Wilson also alleges that he was required to have two years without a Disciplinary Report to complete the SRG program and return to the general population. *Id*. at 6 (¶ 7). Wilson was transferred to the MacDougall-Walker Correctional Institution SRG unit as a pretrial detainee and placed in the "ticket group" with severe restrictions. *Ibid*. (¶ 6). He was permitted three showers per week, three telephone calls per week, five hours of recreation per week, three visits per week with only immediate family, and no access to the law library. *Ibid*. By contrast, in the general population, Wilson would be entitled to 42 telephone calls per week, 14 hours of recreation, and visits with anyone on his visiting list three times per week. *Id*. at 7 (¶ 11). Additionally, Wilson's SRG designation prevents him from attending religious services, receiving hot water, eating away from a toilet, obtaining good time credits or parole, and participating in educational programs, such as GED classes. *Ibid*. Wilson was also attacked in the SRG units and sustained physical injuries to his neck and back. *Id*. at 6 (¶ 10).

Wilson seeks compensatory and punitive damages as well as to "place [him] in General population restoring all privileges," which I construe as a request for injunctive relief. *Ibid*.

Public records reflect that in December 2017, Wilson was sentenced on larceny and burglary charges to six years of imprisonment. *See State v. Wilson*, No. U04W-CR17-0447200-S (Conn. Super. Ct. Dec. 20, 2017).[3] He is now confined at Corrigan-Radgowski Correctional Center. *See* Doc. #10 at 2, 9.[4]

---

[3] *See* State of Connecticut Judicial Branch, Criminal/Motor Vehicle Conviction Case Detail, https://www.jud2.ct.gov/crdockets/CaseDetailDisp.aspx?source=Pending&Key=968993a5-eb44-47f9-bd9a-7566361eda35 [https://perma.cc/BZS3-A6VU] (last accessed October 7, 2020).
[4] *See* State of Connecticut Department of Corrections, Inmate Information, available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=408379 [https://perma.cc/4CX3-XQKD] (last

3

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Injunctive relief*

Wilson's amended complaint does not allege plausible grounds for a grant of injunctive relief. He alleges that he was designated to the SRG program in August 2017 and that "due to this being my second time in SRG I must be 2 years [Disciplinary Record] free to complete the SRG program and return to general population." Doc. #10 at 6 (¶ 7). Two years already elapsed by the time that he filed his initial complaint in November 2019. Although Wilson seeks a court

---

accessed October 7, 2020).

4

order reinstating him to the general population with all privileges, *id.* at 6, in light of Wilson's own allegations that he was subject to a two-year restriction that has now lapsed, the complaint does not plausibly allege any ongoing violation of Wilson's rights from his SRG designation that would warrant a grant of injunctive relief. There is no basis for any official-capacity claims for injunctive relief against any of the individual defendants in the absence of any ongoing violation of Wilson's rights. *See Vaughan v. Aldi*, 2019 WL 6467550, at *3 (D. Conn. 2019).

### *First Amendment retaliation*

In the absence of any grounds for an official-capacity claim for injunctive relief, this leaves for consideration only Wilson's claims for money damages against the defendants in their individual capacities.[5] As to Wilson's claim that he was subject to retaliation for a violation of his First Amendment right to post information on social media, the basic requirements for a First Amendment retaliation claim are "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (internal quotations omitted). Although Wilson alleges that private social media postings are "protected speech," Doc. #10 at 6 (¶ 9), an allegation that prison officials relied on social media posts for making a determination of a detainee's gang membership "is not enough to satisfy the third element, a causal connection between the adverse action and the protected speech" as is required to state a valid First Amendment retaliation claim. *See Caves v. Payne*, 2020 WL 1676916, at *4 (D. Conn. 2020). That is because "[t]he First Amendment ... does not

---

[5] Like his original complaint, Wilson's amended complaint does not specify whether Wilson brings suit against defendants in their personal or official capacity, or both. To the extent that Wilson would seek to advance money damages claims against defendants in their official capacities, they would be immune from suit as DOC employees. *See Currytto v. Doe*, 2019 WL 2062432, at *4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)).

5

prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *United States v. Herron*, 762 F. App'x 25, 30 (2d Cir. 2019) (same).

In the absence of an allegation that Russell sought to punish or retaliate against Wilson simply for engaging in First Amendment-protected expression (or for the content of that expression apart from what it suggested about Wilson's gang affiliation), the amended complaint does not plausibly allege a First Amendment retaliation claim. *See Caves*, 2020 WL 1676916, at *4 (rejecting First Amendment retaliation claim because "[t]he defendants' use of social media posts and Caves' own statements therein, is no different than if Caves announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit"). Accordingly, I will dismiss Wilson's First Amendment claim.

### *Substantive due process*

Wilson's claims can also be construed as alleging a violation of his due process rights. The Due Process Clause of the Fourteenth Amendment protects both a right to "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Substantive due process generally protects against the government's "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* at 846.

In the context of a pretrial detainee's claim against restrictive conditions of confinement, the Second Circuit has made clear that administrative segregation measures do not "violate substantive due process where prison officials subject[] pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Almighty Supreme Born Allah v.*

6

*Milling*, 876 F.3d 48, 56 (2d Cir. 2017). Put differently, "[a]lthough prison officials are to be afforded deference in matters of institutional security, such deference does not relieve officials from the requirements of due process or permit them to institute restrictive measures on pretrial detainees that are not reasonably related to legitimate governmental purposes." *Id.*

In *Almighty Supreme Born Allah*, the Second Circuit concluded that prison officials violated substantive due process when they placed a pretrial detainee in administrative segregation "solely on the basis of his prior assignment to (and failure to complete) the Administrative Segregation program during a prior term of incarceration" and when prison officials "adhered reflexively to a practice that did not allow for individualized consideration of [the plaintiff's] circumstances and that required him to be placed in Administrative Segregation regardless of his actual threat, if any, to institutional security." *Id.* at 57. Here, Wilson does not allege that he was reflexively designated to the SRG program in the absence of any individualized consideration. To the contrary, he alleges that it was Russell's individualized consideration of social media postings that suggested Wilson's gang affiliation and that prompted his SRG designation. Doc. #10 at 5 (¶¶ 1, 3)

Wilson does not otherwise allege that the DOC lacks a legitimate interest in taking security measures against detainees for whom there are grounds to conclude that they are gang members. *See Wilkinson v. Austin*, 545 U.S. 209, 227 (2005) (discussing government interest in "[p]rison security, imperiled by the brutal reality of prison gangs" that "seek nothing less than to control prison life and to extend their power outside prison walls").

Additionally, the Second Circuit has held that, even if a pretrial detainee has been properly subject to administrative segregation, substantive due process also applies to the conditions imposed on the detainee, which must be reasonably related to a legitimate government

7

purpose, such as institutional security. *See Almighty Supreme Born Allah*, 876 F.3d at 55. The Second Circuit raised questions about whether certain conditions "were reasonably related to the ostensible goal of prison security," including solitary confinement for 23 hours per day, showering in leg irons and wet underwear, no programming or counseling therapy, and strict limits on visits, phone calls, and mail. *See id*. at 58; *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (discussing general conditions of confinement requirements to provide food, clothing, and shelter for pretrial detainees under the Fourteenth Amendment).

Wilson alleges that he was subject to "severe restrictions" and deprivations as a result of his SRG designation, such as no access to programs, no religious services, no hot water, and having to eat food next to a toilet. Doc. #10 at 6-7 (¶¶ 6, 11). But the sparse allegations of the amended complaint do not state that any of the named defendants were personally involved with imposing any of these conditions, and they only contain conclusory allegations that the supervisory defendants had knowledge of the imposition of any of these conditions. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

A defendant cannot be held personally liable for a constitutional violation by others simply based on a "high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Even a general allegation that a defendant failed to supervise subordinates does not establish personal involvement without a factual connection between the defendant's alleged failure and the alleged resulting harm to the plaintiff. *See Samuels v. Fischer,* 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (citing cases). Instead, to demonstrate personal involvement of a supervisory official, a plaintiff is required to plead facts alleging at least one of

8

the following scenarios:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[6] In addition to pleading facts that sufficiently show one of these five *Colon* prongs, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury).

Wilson has alleged that Whidden and Aldi made and imposed the policies and directives relevant to designating inmates as SRG members and for allowing DOC staff to access private social media pages to gain information for use against inmates. Doc. #10 at 6 (¶ 8). He adds that Whidden and Aldi were "fully aware" of Russell's actions, failed to intervene, and authorized his SRG placement and punitive measures taken against him. *Id.* at 7 (¶ 12). He also alleges that Santiago and Papoosha, after taking over for Whidden and Aldi, "continued to allow the punitive

---

[6] The Second Circuit has observed that the Supreme Court's decision in *Ashcroft v. Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon*, 720 F.3d at 139. However, without further Second Circuit guidance on this issue, I assume for purposes of this initial review order that the categories outlined in *Colon* remain valid. *See also Barfield v. Semple*, 2019 WL 3680331, at *13 n.11 (noting that district courts in this circuit have concluded that only the first and third *Colon* factors survived *Iqbal*, but that the majority view is that the *Colon* personal involvement analysis still applies to Fourth, Eighth, or Fourteenth Amendment claims of unreasonable conduct or deliberate indifference) (citations omitted).

9

measures to be taken" against Wilson. *Ibid.* (¶ 13).

These allegations are conclusory based on the supervisory defendants' positions and are insufficient to establish a plausible claim of personal involvement for individual liability in a suit brought under § 1983. *See Woolard v. Santiago*, 2020 WL 2079533, at *9 (D. Conn. 2020) ("Plaintiff's conclusory allegation that Director Santiago and SRG Coordinator Aldi are liable because they are supervisors who failed to intervene after becoming aware of the misconduct of their subordinates or created an unconstitutional policy under which unconstitutional practices occurred does not demonstrate the personal involvement of Santiago or Aldi in the alleged violations of Plaintiff's First or Fourteenth Amendment rights.") Moreover, Wilson's allegations focus on the social media post that allegedly led to Wilson's initial SRG designation, not on Wilson's conditions of confinement. Wilson's amended complaint fails to allege facts establishing that any of the named defendants had direct personal involvement in causing Wilson's harsh conditions, including through the *Colon* factors for the supervisory defendants. Accordingly, I will dismiss Wilson's substantive due process claim.[7]

### *Procedural due process*

A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). Liberty restrictions on a pretrial detainee may not amount to punishment of the detainee, and a pretrial detainee who is placed in segregation

---

[7] Additionally, the Second Circuit in *Almighty Supreme Born Allah* ruled that the defendant officers had qualified immunity because the law was not clearly established at the time that they acted. *See* 876 F.3d at 58-60. Because the Second Circuit's decision issued on November 22, 2017, Wilson is unlikely to be able to overcome a qualified immunity defense with respect to allegations of substantive due process violations that occurred prior to that date.

for administrative reasons is entitled to "some notice of the charges against him and an opportunity to present his views." *Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979) and *Hewitt v. Helms*, 459 U.S. 460 (1983)).

Wilson's amended complaint alleges additional facts about his SRG hearing, including that he had no "ability to choose a witness or an advisor/advocate" and that the hearing officer did not allow him to present evidence, a defense, or a rebuttal to the evidence. Doc. #10 at 5 (¶¶ 2, 4). Wilson also alleges that the evidence relied on at the hearing was based on a photograph and comments posted on Facebook without proof that he had made these posts, and that he was not informed of his ability to appeal the SRG designation after his hearing. *Id.* at 5, 7 (¶¶ 3, 15). But Wilson does not name the hearing officer responsible for his alleged treatment at this hearing, nor does he allege any facts to suggest how any of the defendants knew or were personally involved with any impropriety that occurred at any hearing. Accordingly, Wilson has failed to adequately allege a plausible claim for relief against any of the named defendants with respect to his claim that he did not receive a fair hearing. I will therefore dismiss Wilson's procedural due process claim.

**CONCLUSION**

In accordance with the Court's initial review pursuant to 28 U.S.C. § 1915A, the Court DISMISSES the amended complaint with prejudice. As Wilson has already been afforded an opportunity to amend his complaint but has failed to correct the deficiencies the Court has identified, the Court concludes that he will not be able to allege a plausible claim against the named defendants in this action and will not afford him another opportunity to file an amended complaint. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 7th day of October 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge